IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                                    No. CR 01-1517 JC (BB)

JESUS DANIEL PEREZ-TREGO,

       Defendant.

## MEMORANDUM OPINION IN SUPPORT OF DENIAL OF RETRIAL

**THIS MATTER** is before the Court on the motion of Defendant, Jesus Daniel Perez-Trego, for a new trial, and the Court having considered the briefs and oral argument of counsel on April 8, 2002, and being otherwise duly advised, finds the motion lacks factual and legal support, and must be Denied.

Defendant was a passenger in a car smelling strongly of the approximately 213 pounds of marijuana that was in it when the car was stopped west of Columbus, New Mexico. Defendant testified that he was in the car because he was being smuggled into the United States and that he was not involved in importing the marijuana. The jury convicted Defendant.

Two months after the entry of judgment on the jury verdict, defense counsel filed this motion alleging one of the jurors, Karen McClish, informed him

that another juror, Robert Evans, advised the jurors that he had worked for the DEA as an "informant" and that there was "no way" that Defendant's testimony could be true that he was a passenger in the car as a smuggled alien because "a drug smuggler would not also smuggle aliens."

After a hearing, defense counsel was given additional time to produce sworn testimony on exactly what Mr. Evans said. No sworn affidavit was filed,[1] so Defendant has no factual basis on which to base his claim "[t]hat Juror Evans introduced extrinsic material into the deliberations which prejudiced the outcome of the jurors' deliberations." Mot. at 2. *Maldonado v. Missouri Pacific Railway Co.*, 798 F.2d 764, 769-70 (5th Cir. 1986); *Smith v. Brewer*, 444 F. Supp. 482 (S.D. Iowa 1978).

Even if such testimony had been forthcoming, it is clear Mr. Evans never worked for the DEA and was a mere tipster. During voir dire in the presence of all the other jurors, Mr. Evans explained his involvement as an "informant" as follows:

> **Mr. Robert Evans:** My name is Robert Evans. I was an informant for the U.S. Attorneys.
>
> **The Court:** You were what?

---

[1] Ms. McClish did address the Court during a jury "debriefing" session on a subsequent trial after expiration of the deadline. She said she really wanted "to help that kid" but that his lawyer never called back on her "deposition."

**Mr. Robert Evans:** An informant.

**The Court:** How long ago was that?

**Mr. Robert Evans:** About eight years ago.

**The Court:** Do you mind telling us what kind of case?

**Mr. Robert Evans:** Yeah, criminal, drug trafficking.

**The Court:** Okay. Well, I've never had that happen, either.

**Mr. Robert Evans:** Actually, I was not an informant, but just a tip-off.

**The Court:** Yes.

**Mr. Robert Evans:** But I had to appear and testify to what I'd seen and what happened.

**The Court:** Okay. Is that going to cause you a problem? I mean, we've got two drug cases here. Is that going to cause you any problem?

**Mr. Robert Evans:** No, sir.

**The Court:** What did you tip them off on? What kind of drug?

**Mr. Robert Evans:** The guy loaded it in, in front of me, and hauled it out.

**The Court:** Do you know what kind of drug it was?

**Mr. Robert Evans:** Yeah, marijuana.

**The Court:** Marijuana?

**Mr. Robert Evans:** Yeah.

> **The Court:** Okay. Well, we've got a marijuana case here. Is that going to – that won't cause you any problems?
>
> **Mr. Robert Evans:** No problems.
>
> **The Court:** Why did some guy load marijuana in front of you?
>
> **Mr. Robert Evans:** Because he didn't think I had a radio to communicate with the sheriff's office, which I'm an EMT and a firefighter.

Transcript at 30-31. Later, during voir dire, Mr. Evans revealed his cousin was employed by the state police.

Given Mr. Evans' disclosure that he merely reported a crime that he had witnessed, there is no basis to conclude he could bring outside expertise into the jury room. To the contrary, it is clear Mr. Evans, if indeed he said the things attributed to him during jury deliberations, was merely stating his opinion.

Federal Rule of Evidence 606(b) prohibits a juror from testifying as to any matter occurring during the course of deliberations or the effect of anything that was said on the minds of the jurors. *United States v. Miller*, 806 F.2d 223 (10th Cir. 1986); *United States v. Jelsma*, 630 F.2d 778 (10th Cir. 1980). Jurors may not testify as to statements made during deliberations or the effect of such statements on them or the other jurors. *Smith v. Brewer*, 577 F.2d 466 (8th Cir. 1978); *Blake v. Cich*, 79 F.R.D. 398 (D. Minn. 1978).

The Seventh Circuit applied these rules in a somewhat analogous factual context in *Shillcutt v. Gagnon*, 827 F.2d 1155 (7th Cir. 1987). After the defendant was convicted of prostitution-related offenses and had exhausted his state appeals, he sought habeas corpus relief on the basis that during deliberations a juror said, "He's black and he sees a seventeen-year-old white girl – I know the type." 827 F.2d at 1156. The district court denied relief and the Seventh Circuit affirmed. The Court of Appeals noted Rule 606(b) was founded on an informed policy decision that "the rule of exclusion fosters important public policies, including discouraging post–verdict harassment of jurors; encouraging open discussions among jurors; reducing incentives for jury tampering; promoting verdict finality; and maintaining the jury as a viable decision-making body." 827 F.2d at 1158. The Court concluded: "A fruitful exchange of ideas and impressions among jurors is thought to hinge heavily on some assurance that what is said in the jury room will not reach a larger audience. This exchange, however crude or learned, is important enough to preserve." 827 F.2d at 1159).

The Seventh Circuit also outlined other federal cases supporting its application of the prohibition against discovery of juror discussion during deliberations in such a factual setting:

> This decision finds ample support in the cases of other jurisdictions. In *Smith v. Brewer*, 444 F. Supp. 482 (S.D. Iowa), *aff'd*, 577 F.2d 466 (8th Cir.), *cert. denied*, 439

> U.S. 967 (1978), where a juror allegedly mimicked the black defendant's manner of speaking with comments such as "you all," the Eighth Circuit agreed that evidence of the juror's antics should be inadmissible. In *Martinez v. Food City, Inc.*, 658 F.2d 369 (5th Cir. 1981), the Fifth Circuit held that one juror's view that the defendant "should be taught a lesson" was part of the subjective deliberation process of the jury and, therefore, not competent evidence. Another Fifth Circuit case, *United States v. Duzac*, 622 F.2d 911 (5th Cir.), *cert. denied*, 449 U.S. 1012 (1980), stands for the view that testimony concerning jurors' prejudices is incompetent. "The proper time to discover such prejudices is when the jury is being selected and peremptory challenges are available to the attorneys." 622 F.2d at 913. The Supreme Court of South Dakota reached a similar result in holding that evidence of coercion of one juror by other jurors does not constitute "outside influence" and thus is incompetent evidence under South Dakota law. *State v. Finney*, 337 N.W.2d 167 (S.D. 1983). Although the decision in *Tobias v. Smith*, 468 F. Supp. 1287 (W.D.N.Y. 1979) (order new trial where "probability of prejudice") is a troubling exception, the weight of authority follows the lead of the Third Circuit: "Evidence of discussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict is within the rule, rather than the exception, and is not competent evidence to impeach a verdict." *Government of Virgin Islands v. Gereau*, 523 F.2d 140, 150 (3d Cir. 1975), *cert. denied*, 424 U.S. 917 (1976).

827 F.2d at 1158.

After considering this legal precedent and the policy which undergirds it, the Seventh Circuit opined: "Jurors are expected to bring commonly known facts and their experiences to bear in arriving at their verdict. 'We cannot expunge

from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies. These involve the very human elements that constitute one of the strengths of our jury system.'" 827 F.2d at 1159.

The same precedent and policy relied on in *Shillcutt* dictates Defendant's present motion be Denied. Indeed, the present case is even more compelling as Juror Evans revealed both the "bias" and "expertise" during voir dire and counsel neither asked follow up questions, challenged him for cause or used a peremptory strike to exclude him. His reiteration of similar statements during deliberations cannot now serve as the basis for a new trial.

                                                                                 */s/ Bruce D. Black*
                                                                                 **BRUCE D. BLACK**
                                                                            **United States District Judge**

**Counsel for Plaintiff:**
      Richard C. Williams, Special Assistant U.S. Attorney, Las Cruces, NM

**Counsel for Defendant:**
      Herman E. Ortiz, Esq., Garfield, NM